# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **CULLEN ROE,** )<br>)<br>Plaintiff )<br>)<br>)<br>v. )<br>)<br>)<br>**UNIVERSITY OF MASSACHUSETTS** )<br>**AT AMHERST; ENKU GELAYE,** )<br>**Individually and her official capacity as** )<br>**Dean of Students of the University of** )<br>**Massachusetts at Amherst; and DAVID** )<br>**C. VAILANCOURT, Individually and in** )<br>**his official capacity as Associate Dean of** )<br>**Students of the University of** )<br>**Massachusetts at Amherst** )<br>)<br>Defendants )<br>)<br>) | CIVIL ACTION NO. |

## VERIFIED COMPLAINT

### INTRODUCTION

This is a verified complaint for monetary damages and injunctive relief filed by a student at the University of Massachusetts at Amherst against the defendant University and certain administrators for federal and state civil rights violations and other causes of action due to the defendants' arbitrary, unfair, intimidating, wrongful and unlawful decision to summarily expel a student who poses no imminent threat to anyone at the University as an "interim restriction" pending disciplinary proceedings. The student's expulsion took effect on February 7, 2012; to date, a hearing has not been scheduled to determine to whether the student violated the Code of Student Conduct and if so, what the appropriate sanction for any such violation should be.

1

**JURISDICTION AND VENUE**

1. This action arises under the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, Article Twelve to the Massachusetts Declaration of Rights, Mass. Gen. Laws ch. 12, § 11I, and the common and statutory law of Massachusetts.

2. This Court has jurisdiction of this claim under, and by virtue of, 28 U.S.C. § 1331.

3. Venue is proper under 28 U.S.C. § 1391(b). Each and all of the acts alleged herein were done by Defendants' agents and officials not as individuals, but under the color and pretense of regulations, practices, and customs of the University of Massachusetts at Amherst.

4. This Court is authorized to issue the Injunctive Relief requested by Plaintiff under Rule 65 of the Federal Rules of Civil Procedure.

5. This Court is authorized to grant Plaintiff's prayer for relief regarding costs, including a reasonable attorney's fee, under 42 U.S.C. § 1988, and Mass. Gen. Laws ch. 12, § 11I.

**PARTIES**

6. Plaintiff, CULLEN ROE, was at all times material to this complaint a citizen of the Commonwealth of Massachusetts. He resides in Plymouth County. At the times of the incident giving rise disciplinary proceedings, he was a student in good standing at the Defendant University of Massachusetts at Amherst.

7. Defendant, UNIVERSITY OF MASSACHUSETTS AT AMHERST ("the University"), is a public body corporate and politic established, organized, and authorized

under and pursuant to the laws of Massachusetts, with the authority to sue and be sued, and was at all times relevant herein, operating within the course and scope of its authority and under color of state law.

8. Defendant, ENKU GELAYE, is and was at all times relevant herein, the Dean of Students at the Defendant University and acted within the course and scope of her authority as Dean of Students.

9. Defendant, DAVID C. VAILANCOURT, is and was at all times relevant herein, an Associate Dean of Students at the Defendant University and acted within the course and scope of his authority as Associate Dean of Students.

**STATEMENT OF FACTS**

*The Code of Student Conduct*

10. In conjunction with the start of the 2011-2012 academic year, the Defendant University promulgated a *Code of Student Conduct* ("*CSC*").

11. Section II.B of the *CSC* is entitled "Civility, Safety, and Environmental Health."

12. This section provides that certain conduct "shall constitute violations of the *CSC*."

13. Among other things, the *CSC* prohibits non-compliance with "with the directions of University officials acting in performance of their duties."

14. The *CSC* also proscribes "endangering behavior."

15. Such behavior includes but is not limited to:

> Endangering the safety of persons (self or others) or property, or any action that might lead to loss of life or serious physical harm to others, including but not limited to throwing or dropping objects from buildings, sitting on window sills, tampering with or

3

damaging elevator equipment or other machinery, damaging or removing a fire extinguisher or any part of a fire alarm, food fights, hall sports, water fights and snowball fights which involve other than willing participants...

Engaging with others in, or inciting others to engage in, harmful or destructive behavior, in the context of a group of persons disturbing the peace. Specific behaviors may include but are not limited to using violence or threatening violence to others, damaging or destroying property, stealing or looting, setting fires, throwing bottles or other projectiles, impeding or impairing emergency personnel services or equipment, obstructing traffic, refusing to leave when asked by an authorized person, or otherwise engaging in any action that might lead to intentionally or recklessly harming or endangering the physical safety or property of another.

16. In addition to outlining prohibited conduct, the *CSC* also sets forth detailed procedures in cases where allegations of *CSC* violations are made.

17. Once a charge is brought, the charged student must receive a "Notice of Charge" and be given the opportunity to request a "Disciplinary Conference."

18. At such a conference, "the nature of and the responsibility for an alleged offense is discussed" and a charged student is "advised of his ... options to resolve the matter."

19. The possible outcomes of a Disciplinary conference depend upon whether the student is charged with "minor violations" or "more serious infractions"; however, the *CSC* does not define either one of these terms.

20. While the *CSC* notes the Defendant University's "special concern" for incidents where individuals or groups are targeted for abuse based on protected characteristics (such as race or sexual orientation), it does not categorize any of the specifically enumerated offenses as "minor violations" or "more serious infractions."

21. If an official of the Defendant University determines that a more serious infraction has been alleged and the parties cannot agree on the facts of the case or the proper outcome, the matter will be referred to a Hearing Board.

22. Hearing Boards consist of not less three, and not more than five, impartial students and/or University employees.

23. In cases where the student denies the charges, the University bears the burden of proving the charges by a preponderance of the evidence.

24. Accused students may enlist the assistance of an advocate from the University community, confront the live witnesses against them, and offer evidence in their defense.

25. If a Hearing Board determines that a student has violated provisions of the *CSC*, a designated University official may consider a host of factors in deciding on an appropriate sanction, including "the student's present demeanor and past disciplinary record, the nature of the offense," and "the severity of any damage, injury, or harm resulting therefrom."

26. Among other sanctions, a student may be required to vacate University housing.

27. In cases where this sanction is imposed, a student is "entitled to seven calendar days in which to do so."

28. Notwithstanding the foregoing, a designee of the Defendant University "may impose restriction(s) upon a student pending disciplinary proceedings, such interim restrictions to become effective immediately without prior notice whenever there is

ground to believe that the student is an imminent threat to himself or herself, to others, or to property, or the cause of serious imminent disruption to the University community."

29. "Interim restrictions may include, but are not limited to, the following: (1) suspension; (2) assignment to alternate housing; (3) limitation of access to designated University housing facilities and/or other campus facilities by time and location; (4) restriction of communication with named individuals or groups within the University community; and/or (5) the requirement to secure advance authorization to engage in a specified activity."

30. When an interim restriction is imposed, a charged student is entitled to meet with a representative of the Defendant University and "present his or her own version of the facts."

31. If the University representative determines that the interim restrictions will continue, the student is entitled to receive a written statement from the representative explaining the reasons for this decision.

*The Incident Giving Rise to Allegations of CSC Violations*

32. On February 5, 2012, at approximately 10:00 p.m., a large group comprised primarily of Defendant University students gathered on the west side of John Quincy Adams Dormitory following the loss of the New England Patriots in the Super Bowl.

33. This crowd grew in size to approximately 1500 people.

34. Over the course of the next ninety minutes, individuals within this crowd are alleged to have fought, climbed trees, threw bottles, rocks, and ice, attempted to tip over cars, lit fireworks, and started at least one fire.

35. Plaintiff is not alleged to have engaged in any such conduct.

36. At approximately 10:08 p.m., a University police officer read a dispersal order over a loud speaker advising individuals that the gathering was unlawful and their continued presence in the area could subject them to arrest.

37. Approximately three minutes later, this order was read a second time.

38. At approximately 10:12 p.m., uniformed police officers in riot gear, on horseback and accompanied by canines began using flashbang grenades and pepper balls to push the crowd north in the direction of Crampton Courtyard.

39. As uniformed officers held their position in the area around John Quincy Adams Dormitory, plain clothes officers positioned themselves within the crowd.

40. According to Brian Kellogg, one of these plain clothes officers, he observed Plaintiff turn toward uniformed officers and yell "fuck the police," then beckoned the officers to "bring it on."

41. Officer Kellogg subsequently identified himself as a police officer and advised Plaintiff that he was under arrest for failure to disperse and disorderly conduct.

42. It is undisputed that Plaintiff made no effort to resist his arrest and was fully compliant as he was escorted to a nearby police van.

43. In the wake of the incident, Edward Blaguszewski, a spokesperson for the Defendant University, told reporters that the incident "doesn't paint a fair picture of the university as a whole, and that's why we'll be steadfast and prompt about pursuing efforts to sanction students involved . . . . Students here and in the future will understand that we're serious."

*The Disciplinary Proceedings*

44. On Monday, February 6, 2012, Plaintiff attended classes at the Defendant University.

45. The following morning, he was arraigned in Belchertown District Court on the aforementioned charges and tendered pleas of not guilty.

46. Later that day, Plaintiff was told that he had a letter waiting for him at the Dean of Students office.

47. Upon his arrival at the Dean of Students' Office, Plaintiff was told that he had to wait to meet with an associate dean and was not permitted to attend an afternoon class.

48. The author of the letter Plaintiff received was Defendant Gelaye

49. In the letter, she advised Plaintiff that he was being charged with violating the following provisions of the *CSC*: "Failure to Comply with Direction of University Officials" in violation of Section II.B.7; "Endangering Behavior to persons or property" in violation of Section II.B.11a; and "Endanger-Engaging with and/or inciting others" in violation of Section II.B.11b.

50. Defendant Gelaye also advised Plaintiff that his "behavior represents a direct and imminent threat to [his] safety and the safety of the University community," and on that basis immediately expelled Plaintiff as an "interim restriction."

51. During a subsequent meeting with Defendant Vailancourt, Plaintiff was told that the interim restriction of expulsion would remain in effect and that he had until six o'clock that night to vacate his dormitory room.

52. To date, Plaintiff has not received a written explanation as to the reasons why the interim restriction should continue.

8

Case 3:12-cv-30032   Document 1   Filed 02/16/12   Page 9 of 13

53. On February 8, 2012, Plaintiff's father, Dr. Eugene Roe, sent an e-mail to the Dean of Students expressing his "puzzlement" as to why allegations of verbal misconduct resulted in Plaintiff's "an immediate, interim expulsion."

54. In this letter, Dr. Roe also noted that if disciplinary proceedings did not result in Plaintiff's separation from the University, the interim restriction would cause Plaintiff to be "disadvantaged academically" due the number of classes he would have been forced to miss.

55. In response, Defendant Vailancourt called Plaintiff's mother, Mary Roe, and advised her that Dr. Roe failed to recognize the seriousness of the charges.

56. On February 13, 2012, a Disciplinary Conference was held in the office of Defendant Vailancourt.

57. During that conference, when asked about the basis for the interim restriction, Defendant Vailancourt simply stated that it was imposed as a result of the incident and made no effort to explain how Plaintiff represented an imminent threat to anyone or anything at the Defendant University.

58. Following the Disciplinary Conference, Plaintiff received a second letter from Defendant Gelaye.

59. In this letter, Defendant Gelaye acknowledged Plaintiff's request for the cessation of the interim restriction and that this request had been denied.

60. Defendant Gelaye also stated that the case had been referred for a hearing and that an assistant would be contacting him in the "near future" regarding the specifics of that hearing, including the date it would be held.

61. Unless enjoined by this Court, the interim restriction imposed by Defendants will prevent Plaintiff from being able to complete his Spring 2012 classes, take his exams and obtain academic credit for courses completed during the semester.

62. In addition, Plaintiff will not receive reimbursement for all monies paid to the Defendant University for tuition, student fees, room, board, and other costs.

**CLAIMS FOR RELIEF**

COUNT I – 42 U.S.C. § 1983

63. Plaintiff hereby incorporates and adopts each and every allegation in the preceding paragraphs numbered 1 through 62.

63. Pursuant to the Fourteenth Amendment to the United States Constitution, Plaintiff enjoys a property interest in his status as a student at the Defendant University and in the education he has undertaken to receive, as well as a liberty interest in his reputation.

64. Defendants violated Plaintiff's clearly established rights secured by the Fourteenth Amendment, including but not limited to the right to procedural due process, by expelling Plaintiff without providing him a hearing or establishing that he constituted "imminent threat" that would warrant such an interim restriction.

65. Defendants Gelaye and Vailancourt acted with reckless disregard for Plaintiff's constitutional rights.

66. As a direct and proximate result of these acts and omissions Plaintiff has suffered and continues to suffer the harms and damages as described above.

COUNT II – MASS. GEN. LAWS CH. 12, § 11I

67    Plaintiff hereby incorporates and adopts each and every allegation in the preceding paragraphs numbered 1 through 62

68.   Pursuant to Article Twelve to the Massachusetts Declaration of Rights, Plaintiff enjoys a property interest in his status as a student at the Defendant University and in the education he has undertaken to receive.

69.   Defendants violated Plaintiff's clearly established rights secured by the Article Twelve, including but not limited to the right to procedural due process, by expelling Plaintiff without providing him a hearing or establishing that he constituted "imminent threat" that would warrant such an interim restriction.

70    Defendants Gelaye and Vailancourt acted with reckless disregard for Plaintiff's constitutional rights and/or threaten and intimidate Plaintiff for the purpose of preventing him from seeking redress for the violation of his constitutional rights.

71.   As a direct and proximate result of these acts and omissions Plaintiff has suffered and continues to suffer the harms and damages as described above.

## COUNT III – BREACH OF CONTRACT

72.   Plaintiff hereby incorporates and adopts each and every allegation in the preceding paragraphs numbered 1 through 62.

73.   Plaintiff has paid the Defendant University sums of money for his education and housing, and in return, the Defendant University has contracted to provide Plaintiff with access to its undergraduate degree programs, together with housing.

74.   The relationship between the parties is contractual in nature, and each party to the contract owes to the other certain duties; the *CSC* comprises part of the contract between the parties.

75 The Defendant University's failure to abide by procedures and standards it created is a breach of the contract that exists between the parties; as a result of this breach, Plaintiff has suffered, and continues to suffer, the harms and damages as described above.

76 In addition, the Defendant University has failed to honor its obligation of good faith and fair dealing imputed in each contract entered into in the Commonwealth of Massachusetts.

77. As a direct and proximate result of these acts and omissions Plaintiff has suffered, and continues to suffer, the harms and damages as described above

### COUNT IV – MASS. GEN LAWS CH. 186, § 17

79. Plaintiff hereby incorporates and adopts each and every allegation in the preceding paragraphs numbered 1 through 62.

80. Pursuant to Massachusetts General Laws Chapter 186, Section 17, occupancy of a unit in a dormitory of an educational institution for any length of time may be terminated only by seven days' notice in writing to the occupant.

81. Defendants' actions deprived Plaintiff of this statutory right and thereby constituted an unlawful eviction

82. As a direct and proximate result of these acts Plaintiff has suffered and continues to suffer the harms and damages as described above.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants jointly and severally on all counts of this complaint. Plaintiff further requests that this Court:

    A.    Issue an Injunction enjoining Defendants, Defendants' agents, employees and all persons in active concert or participation with them, from violating Plaintiff's constitutional rights by continuing the expulsion that was imposed against Plaintiff on February 7, 2012, pending disciplinary proceedings, or by imposing any other "interim restriction."

    B.    Retain jurisdiction of this matter for the purpose of enforcing this Court's order.

    C.    Award to Plaintiff compensatory damages in an amount to be determined at trial.

    D.    Award Plaintiff the reasonable costs and expenses of this action, including attorney's fees, in accordance with 42 U.S.C. § 1988, and Mass. Gen. Laws ch. 12, § 11I.

    E.    Grant such other and further relief as this Court deems equitable and just under the circumstances.

\* \* \* \* \* \* \*

PLAINTIFF DEMANDS A TRIAL BY JURY

**THE PLAINTIFF**

By:   /s/ Luke Ryan
LUKE RYAN, BBO# 664999
SASSON, TURNBULL, RYAN & HOOSE
100 Main Street, 3rd Floor
Northampton, MA 01060
(413) 586-4800
(413) 582-6419 [FAX]